UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

SALVATORE DINOTO,

         Debtor.
_____/

Case No. 14-59127
Chapter 7
Judge Thomas J. Tucker

**OPINION REGARDING DEBTOR'S OBJECTION
TO THE CLAIM OF RPAD, LLC (CLAIM NO. 9)**

**I. Introduction**

In this Chapter 7 case, a creditor named RPAD, LLC ("RPAD") filed a timely proof of claim, asserting a non-priority, unsecured claim for $934,038.82 (Claim No. 9). The Chapter 7 Debtor filed an objection to RPAD's claim. (Docket # 88, the "Claim Objection"). The Chapter 7 Trustee has not objected to RPAD's claim, has not joined in the Debtor's Claim Objection, and takes no position on the matter. The Court held a hearing, and took the Debtor's Claim Objection under advisement.

For the reasons stated below, the Court concludes that the Debtor lacks standing to object to RPAD's claim. So the Court will enter an order overruling the Debtor's claim objection.

**II. Jurisdiction**

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This proceeding also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within this category in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re*

*Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Background facts

The following background facts are undisputed.

### A. Pre-petition events leading to RPAD's claim in this case

On October 26, 2005, The Private Bank and Little Road, LLC entered into a loan agreement under which The Private Bank loaned $862,500 to Little Road, LLC to build custom homes. The loan was secured by a mortgage on the real property owned by Little Road, LLC, and the loan was personally guaranteed by the Debtor, Salvatore DiNoto, the Debtor's nephew, Peter DiNoto, and four other individuals and entities. On January 26, 2008, the loan was renewed by a second note, in the amount of $776,200. The second note matured on October 26, 2008 and was in default.

On or about June 5, 2009, The Private Bank foreclosed on the property securing the loan, which resulted in a deficiency balance of $559,143.27. The Private Bank filed a complaint against the guarantors of the loan in Macomb County Circuit Court, Case No. 09-2960-CK, seeking to recover the amount of the deficiency. On March 23, 2010 the Macomb County Circuit Court granted The Private Bank's motion for summary disposition and entered a judgment against Little Road, LLC, Peter DiNoto, the Debtor and the other guarantors, jointly and severally, in the amount of $601,544.97, plus $12,445.96 in costs and attorney fees (the "Judgment").

On January 7, 2012, Peter DiNoto filed a chapter 7 bankruptcy case in this court, Case

2

14-59127-tjt    Doc 110    Filed 11/03/17    Entered 11/03/17 15:19:31    Page 2 of 18

No. 12-40351-mbm, and a discharge was entered on June 12, 2012. Almost two years later, on April 16, 2014, Peter DiNoto purchased The Private Bank's rights, title and interest in the Judgment, for $11,500.00. He then recorded an Assignment of Judgment with the Macomb County Clerk, on May 7, 2014. Peter DiNoto then formed RPAD on June 10, 2014, and assigned his rights in the Judgment to RPAD. RPAD recorded that Assignment of Judgment with the Macomb County Clerk on June 18, 2014.

**B. This bankruptcy case**

On December 14, 2014, the Debtor filed this Chapter 7 bankruptcy case. RPAD filed a proof of claim in this case on January 26, 2017, in the amount of $934,038.82, based on the Assignment of Judgment. The Debtor now objects to this claim.

**IV. Debtor's Claim Objection arguments**

Apart from the issue of standing, the Debtor argues two main theories, both based on Michigan law. First, the Debtor argues that, at a minimum, RPAD's claim must be drastically reduced. The Debtor argues that, at most, RPAD can only seek contribution from the Debtor as a one-sixth co-guarantor of Little Road, LLC's debt to The Private Bank. The Debtor argues that the co-guarantor Peter DiNoto's payment of $11,500.00 to The Private Bank functioned as a settlement of the debt of the primary obligor Little Road, LLC, and of the guarantors. As a result, according to the Debtor, Peter DiNoto, as the guarantor who paid off the debt to the bank for $11,500.00, could only be entitled to equitable contribution from his co-guarantors toward the amount he paid. Because there were six guarantors on the original debt, the Debtor argues that RPAD, as the assignee of Peter DiNoto, is only entitled to recover, at most, one-sixth of the $11,50.00 "settlement" amount, or $1,916.67, from the Debtor.

3

The Debtor argues, as a second theory, that RPAD's claim must be disallowed in its entirety. The Debtor argues that when Peter DiNoto paid The Private Bank and received the assignment of the bank's judgment, Peter DiNoto owed a fiduciary duty, not only to Little Road, LLC, but also to the Debtor, because both Peter DiNoto and the Debtor were members and managers of Little Road, LLC. As a result, Debtor argues, when Peter DiNoto had the opportunity to purchase the Judgment, he must be deemed to have done so for the benefit of Little Road, LLC and its members and managers, not just for himself personally. The Debtor claims that when Peter DiNoto purchased the Judgment, the debt of Little Road, LLC was satisfied, so that the guarantees were extinguished. The Debtor argues that he never owed anything to Peter DiNoto, or to RPAD as Peter DiNoto's assignee.

RPAD disputes the Debtor's Claim Objection theories, based on a number of arguments.

**V. Discussion**

**A. Standing**

A threshold issue the Court must address is whether the Debtor has standing to object to RPAD's claim. RPAD argues that the Debtor lacks standing.

**1. Applicable law**

The general rule is that a debtor in a Chapter 7 case does not have standing to object to a proof of claim. This is because, in the vast majority of Chapter 7 cases, it makes no financial difference to the debtor whether claims are paid by the Trustee or in what amount claims are paid.

> Under 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a "party in interest" objects. *See also* Fed. R. Bankr. P. 3008. The Bankruptcy Code nowhere defines the term "party in

4

interest." The vast majority of courts have held that only a Chapter
7 trustee may file objections to a proof of claim.

*United States v. Jones*, 260 B.R. 415, 418 (E.D. Mich. 2000) (collecting cases).

> Generally, to have standing in a bankruptcy case, a person must
> have a pecuniary interest in the outcome of the bankruptcy
> proceedings. One rule that follows from this "pecuniary interest"
> standard is that an insolvent Chapter 7 debtor generally does not
> have standing to object to claims, because he is considered to have
> no interest in how his assets are distributed among his creditors and
> is held not to be a party in interest.

*In re Moss*, 320 B.R. 143, 149 (Bankr. E.D. Mich. 2005). "In fact, almost every court that has dealt with the issue of a Chapter 7 debtor's standing to object, has held that unless there is going to be a surplus, debtors do not have standing to object to a proof of claim." *Jones*, 260 B.R. at 418.[1] This is so because only when there is a surplus in the bankruptcy estate — *i.e.*, the assets in the estate exceed in value the amount necessary to pay all allowed administrative expenses and all allowed creditor claims in full with interest — will the debtor be entitled to any distribution from the estate. *See* 11 U.S.C. § 726(a).

Further, in trying to demonstrate standing, "the [D]ebtor cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility." *Simon v. Amir (In re Amir)*, 436 B.R. 1, 10 (B.A.P. 6th 2010) (internal citations and quotations omitted). The Debtor has the burden of demonstrating such a reasonable possibility of a surplus. *See id.*; *see also In re Lunan*, 523 Fed. App'x. 339, 340 (6th Cir. 2013) (same). The

---

[1] An exception to this surplus rule, not applicable in this case, is that "when the debtor has a non-dischargeable debt, for which the debtor will remain personally liable after the bankruptcy," the debtor has standing to object to a claim if success on the objection will increase the bankruptcy estate's distribution on the non-dischargeable claim. *See Moss*, 320 B.R. at 149-50 and cases cited therein; *see also Jones*, 260 B.R. at 418 and cases cited therein.

5

Debtor acknowledges that he must make this showing.[2]

**2. Whether the Debtor has demonstrated a "reasonable possibility" that there will be a surplus in the bankruptcy estate, if RPAD's claim is disallowed**

In this case, the claims filed total $961,739.31, of which $934,038.82 represents the claim of RPAD. The Debtor points out that if the Court grants the relief the Debtor requests and disallows RPAD's claim, the total claims will be only $27,700.49. The Debtor argues that it is reasonably possible that the Chapter 7 Trustee will recover more than this amount, resulting in a surplus in the estate, which would be distributed to the Debtor. But the Court finds the Debtor's evidence of this lacking, for the reasons that follow.

**a. The Trustee's April 4, 2017 estimate that the bankruptcy estate's recovery will exceed $30,000**

As part of his support for his surplus argument, the Debtor relies on an email exchange his attorney had with the Trustee's attorney on April 4, 2017, in which the Debtor's attorney asked "Will you please confirm for me that a fair estimated recovery would be greater than $30,000?" The Trustee's attorney responded, "Yes, I would agree to that."[3]

This purported evidence falls far short of showing a reasonable possibility of a surplus in this case. There are at least three problems with this purported evidence. First, both at the time when the Trustee's attorney made the above statement on April 4, 2017, and as of the date of the Trustee's most recent annual report, filed more than six months later on October 23, 2017, the

---

[2] *See* Debtor's Brief in Support of Obj. To Claim (Docket# 88) at 4 (pdf p. 6).

[3] *Id.* at 4-5 (pdf pp. 6-7).

6

Trustee had not recovered *any* funds for the bankruptcy estate.[4]

Second, while it is true that the non-priority, unsecured claims other than RPAD's claim total $27,700.49, the Debtor has failed to account for administrative expenses that will need to be paid before these other creditors are paid anything. The administrative expenses in this case are likely to be substantial given the amount of work the Trustee's counsel already has done in this case, and the work the Trustee's counsel still must do if the Trustee is going to continue to pursue his pending adversary proceeding against Debtor and his relatives (described below). Thus, it is likely that the Trustee would need to recover much more than $30,000.00 for the estate to have a surplus, even if RPAD's claim were disallowed.

A third problem with Debtor's e-mail evidence is that circumstances have changed significantly since the Trustee's attorney made her $30,000.00 estimate in April 2017. As described below, the Court recently overruled the Trustee's objection to the Debtor's claimed exemption in the Debtor's home (the Azure Drive property in Shelby Township, Michigan). That ruling, which the Trustee has not appealed, makes the Debtor's interest in that property entirely exempt, thereby eliminating a potential source of funds that the Trustee had been pursuing before the Court's ruling.

**b. The potential value of the assets in the bankruptcy estate**

A review of the potential values of the estate assets in this case leads the Court to conclude that the Debtor has failed to meet his burden of demonstrating that a surplus is a "reasonable possibility" in this case.

---

[4] In the Trustee's annual report filed October 23, 2017 (Docket # 107), the Trustee shows $0.00 as amount of the "Funds Received by the Estate."

**i. The Azure Drive property**

Until recently, one of the potential assets in the bankruptcy estate was the Debtor's interest in the home located at 13196 Azure Dr., Shelby Township, MI (the "Azure Property"). In his schedules and amended schedules, the Debtor listed the value of the Azure Property as $471,000. The Trustee and RPAD have pointed out, at various times during this case, that they believe the value of the Azure Property is substantially more than $471,000. Recently, for example, the Trustee argued that the value of this property is "somewhere between $669,000 and $675,000."[5] Taking into account the two mortgages on the property, which secure debts totaling $434,715.00 according to the Debtor,[6] this would mean that there is equity in the Azure property of at least $234,285.00.

As of the bankruptcy petition date, the Debtor owned an undivided one-half interest in the Azure Property, with his wife, in a tenancy by the entireties. In his most recent amended Schedule C, the Debtor claimed an exemption in the Azure Property for the full value of his interest, under Mich. Comp. Laws Ann. § 600.5451(1)(n), Michigan's tenancy by the entireties exemption.[7]

The Chapter 7 Trustee objected to this claimed exemption, in part, because the Debtor and his wife divorced after this bankruptcy case was filed.[8] But after holding a hearing on October 11, 2017, the Court overruled the Trustee's objection to exemption, ruling that the

---

[5] *See* Trustee's Brief in Support of Obj. To Exemptions (Docket # 102) at 7 (pdf p. 12).

[6] *See* Debtor's Amended Schedule D, filed June 6, 2017 (Docket # 89).

[7] Debtor's Amended Schedule C (Docket # 99).

[8] Docket # 102.

8

Debtor's interest in the Azure Property is entirely exempt.[9]

As a result, the Debtor's interest in the Azure Property will not yield any money for the bankruptcy estate.

### ii. The Rust Township property

Debtor's original Schedule A and amended Schedule A/B both disclosed that the Debtor owns an undivided 1/4 interest in 6 acres of undeveloped land in Rust Township, Montmorency County, Michigan, of an "unknown" value. Debtor described his ownership interest as "held by entireties and owned jointly [with his wife] with full rights of survivorship and not as tenants in common, with three other married couples."[10] In the Debtor's most recent amended claim of exemptions, filed July 19, 2017, the Debtor claimed an exemption of the full fair market value of this property, under Mich. Comp. Laws Ann. § 600.5451(1)(n),[11] and that exemption is deemed allowed because no one timely objected to it.

From this, and from the Trustee's recent annual report, filed October 23, 2017, it is clear that this asset will not yield any value for the bankruptcy estate.[12]

### iii. The Montelepre Drive property

In an application to employ a real estate broker filed on March 28, 2017,[13] the Trustee

---

[9] Order Overruling Chapter 7 Trustee's Objection to Exemptions, filed October 11, 2017 (Docket # 105). The Trustee did not appeal the Court's ruling, and the time for doing so has passed.

[10] Docket # 1 (Schedule A); Docket # 89 (Schedule A/B).

[11] Docket # 99.

[12] The Trustee's recent annual report lists this asset as "fully administered," with no funds received by the bankruptcy estate for it. (Docket # 107).

[13] Docket # 77.

9

mentioned trying to sell not only the Azure Property, but also the real property located at 48626 Montelepre Dr., Shelby Township, MI (the "Montelepre Property"). This property is not listed in the Debtor's schedules. According to RPAD and the Trustee, the Debtor now owns the Montelepre Property in a joint tenancy with his brother, John DiNoto. The Debtor obtained his interest post-petition, as the result of a state court fraudulent transfer action against the Debtor, John DiNoto and others, which avoided a transfer that was made more than six years before the Debtor filed his bankruptcy petition in this case.[14]

There is no evidence in the record regarding the value of the Montelepre Property or whether there are any encumbrances on the property. Nor is it clear that the Montelepre Property is even property of the bankruptcy estate.[15] And the Trustee did not list the Montelepre Property

---

[14] On February 15, 2016, RPAD filed a motion seeking relief from stay, to permit the state court fraudulent transfer action to go forward without the Debtor (Docket # 29). The Court granted the motion on March 23, 2016 (Docket # 43).

[15] The fraudulent transfer by the Debtor and John DiNoto of the Montelepre Property occurred more than six years before the bankruptcy petition date, on September 30, 2008. (*See* Quit Claim Deed, Ex. F at Docket # 30). Because of this, the Chapter 7 Trustee could not avoid the transfer by using either 11 U.S.C. § 548 (which is limited to transfers made within two years before the bankruptcy petition) or the combination of 11 U.S.C. § 544 and Michigan's fraudulent transfer statute, Mich. Comp. Laws Ann. § 566.31 et seq. (which has a six-year look-back period, *see* Mich. Comp. Laws Ann. §§ 566.39(a), 600.5813). The creditor RPAD filed its fraudulent transfer action in state court pre-petition, and within six years after the transfer. And the transfer was actually avoided post-petition. In part for these reasons, and for the reasons stated by the Court during the March 23, 2016 hearing, the Court's March 23, 2016 stay-relief order left open the following issues:

> The Court makes no determination, at this time, about: (a) whether or to what extent a successful avoidance of the real estate transfer in the Macomb County Case would result in there being any property of the bankruptcy estate, *e.g.*, in the form of the Debtor Salvatore Dinoto then having an interest in the real property at issue, which would be deemed to be property of the bankruptcy estate; or (b) the Debtor's ability to exempt in whole or in part any such property of the bankruptcy estate.

(*Id.* at 2, ¶ 5).

10

in his recent annual report, as either a scheduled or unscheduled property.[16]

Based on the foregoing, the Court cannot determine on the present record that the Trustee can or will sell the Montelepre Property for any amount that would yield any money for the bankruptcy estate.

**iv. The Trustee's pending adversary proceeding against the Debtor and his relatives**

The Trustee filed an adversary proceeding against the Debtor, Sue DiNoto (now his ex-wife) and Rosario DiNoto (his son), alleging that the Debtor fraudulently transferred money to Sue and Rosario to finance the purchase of the real property and construction of the house located at 311 Shortridge, Rochester Hills, MI (the "Rochester Property"). The Trustee claims that the Rochester Property is now worth $367,759 and is unencumbered. He seeks either to set aside the transfer or to obtain a money judgment for the value of the property.

If the Trustee is successful in this adversary proceeding, it could bring property of substantial value into the bankruptcy estate. Notably, however, the Debtor and the other Defendants have defended against the Trustee's complaint, and have taken the position that the Trustee is entitled to no relief. The Debtor's position in the adversary proceeding is that there was no fraudulent transfer and that neither the Rochester Property nor its value can be brought into the bankruptcy estate. Thus, the Debtor's position is, in effect, that the Trustee's claims in the adversary proceeding have no value. The Court will hold the Debtor to that position now. Consistent with the Debtor's position taken in the adversary proceeding, the Court must conclude that the Debtor has failed to demonstrate that the pending adversary proceeding has any value to the bankruptcy estate.

---

[16] Docket # 107.

### v. The pending lawsuit against Frank Farnese

The only other asset which possibly may have any value for the estate is a state court action the Debtor filed pre-petition, against Frank Farnese, Macomb County Circuit Court Case No. 14-0387-CZ (the "Farnese Action"). The Defendant recently filed a notice of removal, purporting to remove the Farnese Action to this Court (Adversary Proceeding No. 17-4743). But on November 3, 2017, this Court entered an order remanding the case to the state court, because the Court found that Farnese's filing the notice of removal was void, as a violation of the automatic stay under several provisions of 11 U.S.C. § 362(a), and of the discharge injunction under 11 U.S.C. § 524(a)(2).[17]

The Debtor has not demonstrated that the Farnese Action has any value to the bankruptcy estate, let alone a value high enough to make this a surplus bankruptcy case.

In the Farnese Action, which the Debtor filed in the state court on January 31, 2014, the Debtor alleged that he is owed $185,000 plus interest for a loan he made to Romeo Plank Investors, LLC ("RPI"), and its owner, Peter DiNoto (the Debtor's nephew).[18] The Debtor further alleged that as security for repayment of this loan, he has "a valid purchase money mortgage, lien, or equitable mortgage" on a certain 15-acre parcel of vacant land in Macomb Township, Michigan (the "Macomb Township Land").[19] The Debtor filed the Farnese Action against Frank Farnese, who allegedly is or was the father-in-law of Peter DiNoto, because

---

[17] Order Remanding Case to State Court (Docket # 3 in Adv. No. 17-4743).

[18] The Debtor's complaint in the Farnese Action appears as Exhibit A to Farnese's notice of removal, filed at Docket # 1 in Adv. No. 17-4743. That complaint is cited in this opinion below as "Farnese Complaint ¶ __."

[19] *See, e.g.*, Farnese Complaint ¶¶ 5, 42-43.

Farnese is the current title holder of record of the Macomb Township Land. The Debtor alleged that Farnese acquired title to the Macomb Township Land through a fraudulent transfer from RPI. The Debtor's complaint alleged that RPI acquired the Macomb Township Land originally by using proceeds of the Debtor's $185,000 loan. RPI later encumbered the property with a $200,000 mortgage to Comerica Bank, which later foreclosed on the property, but RPI later redeemed the property from the foreclosure sale. It was after the redemption that RPI transferred the Macomb Township Land to Frank Farnese.

The Debtor's state court complaint seeks to enforce the Debtor's claimed lien against the property, and also seeks damages and a declaratory judgment, all based on the Debtor's claimed lien. The defendant Frank Farnese, for his part, filed an answer and affirmative defenses, and counterclaims, in the Farnese Action.[20] Farnese denied and contested the Debtor's claims. Farnese's counterclaims are based on a notice of *lis pendens* that the Debtor recorded against the Macomb Township Land, which, Farnese alleged, improperly created a cloud on, and slander of, Farnese's title to the property, and caused Farnese to suffer damages.

The Farnese Action was still pending when the Debtor filed this bankruptcy case on December 14, 2014. The Debtor disclosed the Farnese Action in his original Schedule B, filed December 14, 2014,[21] and to date has never claimed any exemption in that asset. The Debtor's original Schedule B, and his most recent amended Schedule A/B filed on June 6, 2017,[22] both

---

[20] Farnese's pleadings in the Farnese Action appear as Exhibits B and C to Farnese's notice of removal, filed at Docket # 1 in Adv. No. 17-4743.

[21] Schedule B, item # 21 (Docket # 1).

[22] Amended Schedule A/B, item # 34 (Docket # 89).

13

state that the value of the Farnese Action is "[u]nknown." Thus, the Debtor has twice indicated, in his sworn schedules, that it is unknown whether the Farnese Action has any value for the bankruptcy estate.

To date, at least, the Chapter 7 Trustee apparently has done nothing to prosecute the Farnese Action on behalf of the bankruptcy estate. The only indication of the estimated value that the Trustee ascribes to this asset is contained in the Trustee's annual reports filed on October 12, 2016 and October 23, 2017,[23] in which the Trustee estimated that the Farnese Action has a value of $150,000.00. The basis for this estimate is not clear. The Debtor has presented no real support for this estimate, and the Court is not aware of any such support in the record.

The Trustee's apparently unsupported estimate of value may be at least loosely related to a settlement that the Trustee tried to make with Peter DiNoto and Frank Farnese in July 2016. On July 29, 2016 the Trustee filed a motion seeking this Court's approval of an agreement, in which Peter DiNoto and Frank Farnese agreed to pay the estate $150,000.00 in exchange for a number of things from the estate.[24]

In exchange for their $150,000.00 payment, DiNoto and Farnese were to have received all of the following from the bankruptcy estate:[25]

- dismissal with prejudice of the Farnese Action;
- assignment of the bankruptcy estate's interest in the Trustee's avoidance adversary

---

[23] Docket ## 66, 107.

[24] Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 (Docket # 51, the "Compromise Motion").

[25] *See* Compromise Motion at ¶¶ 4-5 and Settlement Agreement (Docket # 51, Ex. 2) at 2, ¶¶ 1-3.

proceeding against the Debtor, his wife, and his son (described in Part V.A.2.b.iv of this opinion, above);

- assignment of the bankruptcy estate's interest in the avoidance action filed pre-petition by RPAD, regarding the Montelepre Drive Property (discussed in Part V.A.2.b.iii of this opinion, above);

- assignment of the bankruptcy estate's 25% interest in the Rust Township Property, held jointly with the Debtor's then-wife (described in Part V.A.2.b.ii of this opinion, above),

- assignment of the bankruptcy estate's 10% interest in property referred to as the "Elm Grove LLC Property;"[26]

plus

- assignment of the bankruptcy estate's 6.66% interest in property referred to as the "Hayes 18 Investment, LLC Property."[27]

After objections were filed by the Debtor and his wife Sue DiNoto, the Court refused to approve the Trustee's proposed settlement with Peter DiNoto and Farnese. This was done, however, for reasons unrelated to the value of the assets. Rather, it was done because the Court

---

[26] The "Elm Grove LLC Property" is a reference to the Debtor's 10% interest in Elm Grove LLC, which the Debtor disclosed in his original Schedule B and amended Schedule A/B. (Docket # 1, 89). According to these schedules filed by the Debtor, this LLC "owns realty with fmv +$800,000.00." The Debtor's stated value of his 10% interest in this LLC, however, is "[u]nknown." (Schedule B (Docket # 1); amended Schedule A/B (Docket # 89).

[27] The "Hayes 18 Investment, LLC Property" is a reference to the Debtor's 6.66% interest in Hayes 18 Investments LLC, which the Debtor disclosed in his original Schedule B and amended Schedule A/B. (Docket # 1, 89). According to these schedules filed by the Debtor, this LLC "owns and leases a 10,000 sq. ft. commercial bldg: fmv + $1,000,000.00." The Debtor's stated value of his 6.66% interest in this LLC, however, is "[u]nknown." (Schedule B (Docket # 1); amended Schedule A/B (Docket # 89).

ruled that a Chapter 7 Trustee cannot assign avoidance actions. *See In re DiNoto*, 562 B.R. 679 (Bankr. E.D. Mich. 2016) (citing *In re Clements Mfg. Liquidation Co., LLC*, 558 B.R. 187 (Bankr. E.D. Mich. 2016)).[28]

In denying the Trustee's settlement motion, the Court explicitly left open the possibility of approving a settlement that did not include the assignment of any avoidance actions,[29] but the parties chose not to agree to such a revised settlement. From this the Court infers that Peter DiNoto and Frank Farnese certainly were not willing to pay $150,000.00 for the *other* estate assets, namely: the dismissal with prejudice of the Farnese Action; plus the assignment of the Rust Township Property, the "Elm Grove LLC Property" and the "Hayes 18 Investment, LLC Property." The record does not reveal whether Peter DiNoto or Frank Farnese were willing to pay *anything* for any or all of these assets. Based on these circumstances, the Court cannot determine whether Peter DiNoto and Frank Farnese considered these other things, including the dismissal with prejudice of the Farnese Action, to have *any* value. And the record does not reveal any further efforts by the Trustee to settle the Farnese Action.

The Court's order declining to approve the settlement was filed on November 30, 2016.[30] Since that time, the Chapter 7 Trustee has not yet done anything to prosecute the Farnese Action. From the Court's review of the pleadings filed in that action, it is far from clear that the action has any significant value for the bankruptcy estate. Moreover, the Debtor has not presented any

---

[28] The Court's published opinion is filed at Docket # 73.

[29] *See* Order Regarding Further Proceedings on the Chapter 7 Trustee's Motion to Approve Compromise (Docket # 67) at ¶ 2; Opinion and Further Order Regarding the Chapter 7 Trustee's Motion to Approve Compromise, and Adjourning the November 16, 2016 Hearing (Docket # 73) at 3-4.

[30] Docket # 74.

16

facts or reasons for the Court to think that the Trustee will be able to achieve any significant value for the estate by pursuing the Farnese Action.

**c. Conclusion regarding the potential value of the bankruptcy estate assets**

As of now, the Trustee has not yet reduced any estate property to money. The bankruptcy estate has no funds. Whether in the future the Trustee will actually recover any money at all, let alone enough to create a surplus estate, is very speculative, at best. As noted in Part V.A.1 of this opinion, the Debtor must show more than "a theoretical chance of a surplus" in order to have standing. He has not done so.

The Court finds that the Debtor has failed to show that there is a "reasonable possibility" that the bankruptcy estate will result in a surplus, if RPAD's claim is disallowed. The Court therefore concludes that the Debtor lacks standing to object to the RPAD's claim.

Because the Court finds that the Debtor lacks standing to object to RPAD's claim, the Court does not address the Debtor's substantive arguments in the Claim Objection.

**B. The Trustee's right to object to claims in the future**

Nothing said in this opinion precludes the Trustee from objecting to RPAD's claim in the future. The Trustee's duties include the duty to "examine proofs of claims and object to the allowance of any claim that is improper," but only "if a purpose would be served" in doing so. *See* 11 U.S.C. § 704(a)(5). To date, at least, the Trustee has chosen not to object to RPAD's claim. This may be, in part, because so far the Trustee has no funds in the bankruptcy estate, and it is possible that there will never be any funds in the estate. The Trustee may have concluded that it would not serve any purpose for him to object to any claims, unless and until there are actually any funds in the estate. Or, the Trustee may disagree with the Debtor's Claim Objection

17

arguments on the merits, although the Trustee has not said this. In any case, nothing precludes the Trustee from objecting to RPAD's claim, or the claim of any other creditor, in the future.

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter an order overruling the Debtor's objection to RPAD's claim, for lack of standing.

**Signed on November 3, 2017**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**